UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER T. LOFTIN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ANDRES BANDE, et al., <br><br> Defendants. | Case No. 2008-MC-00487 (AK)(HK) <br><br> Judge Henry H. Kennedy <br> Magistrate Judge Alan Kay |

**GIBSON, DUNN & CRUTCHER LLP'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF DOCUMENTS WITHHELD ON PRIVILEGE GROUNDS**

John C. Millian (DC Bar #413721)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

Attorneys for Respondent
Gibson, Dunn & Crutcher LLP

August 26, 2008

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ............................................................................................. 1

II. BACKGROUND ................................................................................................................... 2

III. ARGUMENT ......................................................................................................................... 5

    A. The Plaintiffs Have Sufficient Information to Evaluate the Privileges and Immunities From Production Asserted by Gibson Dunn........................................ 7

    B. The Challenged Documents Were Properly Withheld From Production ............ 10

        1. Communications Between FLAG's Outside and In-House Counsel And FLAG Employees Are Protected By The Attorney-Client Privilege ............................................................................................... 11

        2. Documents Created in Anticipation of Litigation are Protected by the Work-Product Doctrine............................................................... 12

III. CONCLUSION .................................................................................................................... 15

Gibson, Dunn & Crutcher LLP ("Gibson, Dunn" or the "Firm") respectfully submits this memorandum of law in opposition to the plaintiffs' motion seeking to compel it to produce a client's privileged documents (the "Motion").

## I.

## PRELIMINARY STATEMENT

This miscellaneous action concerns to a non-party subpoena (the "Subpoena") served by plaintiffs upon Gibson, Dunn in connection with a pending securities class action lawsuit (the "Securities Lawsuit") brought by plaintiffs in the United States District Court for the Southern District of New York. The defendants in that action are certain former officers and directors of FLAG Telecom Holdings, Ltd. ("FLAG" or the "Company"), as well as an investment bank that served as the lead underwriter in FLAG's initial public offering. Gibson, Dunn has no direct involvement in the Securities Lawsuit, but was subpoenaed because it served as FLAG's outside counsel during certain periods relevant to that action.

Gibson, Dunn has produced over 3,000 documents to plaintiffs in response to the Subpoena. As would be expected given the attorney-client relationship between Gibson, Dunn and FLAG, Gibson Dunn has also withheld production of a number of documents on privilege grounds, and as further described below Gibson, Dunn has produced two privilege logs listing those documents. These are in addition to what we understand to be millions of pages produced to plaintiffs by the defendants in the Lawsuit.

Plaintiffs' Motion seeks to compel production of documents that have properly been withheld from disclosure based on the attorney-client privilege and/or the work product doctrine. Plaintiffs do not contend that Gibson, Dunn has any special information that they are unable to obtain elsewhere. Their arguments are, instead, based on what they claim are imperfections in Gibson, Dunn's privilege logs, and on the insupportable contention that Gibson, Dunn's

documents are not privileged. In fact, the plaintiffs have no basis on which to challenge the privilege logs—the plaintiffs know what the withheld documents are, they know what the privileged communications are about, and they know the basis of the privilege asserted. Their desire for more detail is not a sufficient basis to invade the privilege of one of the firm's clients—a client that is not a party to this proceeding and has not been a party to the underlying litigation since January 2005 (long before the plaintiffs sent the subpoena that they seek to enforce here). The documents the plaintiffs seek contain communications between Gibson, Dunn and its client, FLAG, communications between FLAG's in-house counsel and FLAG employees, or material created in anticipation of litigation, and they are most certainly protected from disclosure. The plaintiffs' motion should be denied.

## II.

## BACKGROUND

During the relevant period, FLAG was a telecommunications company registered in Bermuda with its primary offices in London, England. *See Rahl v. Bande*, 328 B.R. 387, 406 (S.D.N.Y. 2005); Declaration of John C. Millian ("Millian Decl.") ¶ 4. FLAG is and was in the business of selling broadband capacity to other broadband and telecommunications providers. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d at 252. The Company went public in February 2000. Id. Two years later, in the wake of the collapse of the telecommunications industry, FLAG filed for protection under Chapter 11 of the United States Bankruptcy Code. *See Rahl v. Bande*, 316 B.R. 127, 130 (S.D.N.Y. 2004). The Company emerged from bankruptcy on October 9, 2002. Id.

Gibson, Dunn was first retained by FLAG in approximately June 2001 to provide general legal services, including advice on transactional and regulatory matters. Millian Decl. ¶ 5. In early February 2002, FLAG sought additional legal advice from Gibson, Dunn regarding

2

FLAG's participation in certain "reciprocal transactions," also sometimes colloquially referred to as "capacity swap" transactions. *Id.* ¶ 6. FLAG's retention of Gibson, Dunn came shortly after controversy arose regarding reciprocal transactions entered into by certain other broadband providers, including Global Crossing and Qwest. Global Crossing had filed for bankruptcy court protection on January 28, 2002, and the next day a former Global Crossing executive had publicly accused that company of having entered into and improperly accounted for several "capacity swap" transactions, including transactions between Global Crossing and Qwest, in an effort to boost Global Crossing's reported financial results. By February 4, 2002, class action securities lawsuits had been filed against Global Crossing executives, and press reports indicated that the SEC was investigating the transactions. *Id.* ¶ 7.

Given the intense focus that was being given to other reciprocal transactions in the press, in court, and by government agencies, Gibson, Dunn was asked to review FLAG's reciprocal transactions, report on those transactions to the Company's management and board, and otherwise to assist FLAG with various issues that were likely to come up with respect to those transactions. This legal work included, among other tasks, providing legal advice with regard to FLAG's February 13, 2002 earnings announcement, which contained a section discussing the accounting for the company's reciprocal transactions. *Id.* ¶ 8. This earnings announcement features prominently in plaintiffs' Lawsuit, and indeed the end of plaintiffs' proposed class period is tied to this event. *See* Corrected Fourth Consolidated Amended Complaint ("Complaint") ¶¶ 2, 194-198, attached as Exhibit 3 to the Declaration of Brad N. Friedman ("Friedman Decl.") submitted with plaintiffs' motion. Gibson, Dunn also provided legal advice to FLAG with respect to its Form 10-K for the period ended December 31, 2001, filed with the

3

SEC on or about April 1, 2001, which likewise is prominently referenced in plaintiffs' Complaint. Millian Decl. ¶ __; Complaint ¶ 199.

Flag's request for legal advice from Gibson, Dunn was made within a few days after another broadband provider, Global Crossing, filed for bankruptcy and became embroiled in accusations that it had entered into and improperly accounted for several "capacity swap" transactions in an effort to boost its reported financial results, resulting in securities class action litigation and an SEC investigation launched immediately against that company. Given these events—and given that experience has shown that when companies, particularly newly-public technology firms, announce disappointing earnings to the market, as FLAG did in its February 13, 2002 announcement, the likelihood that a securities class action lawsuit will be filed is relatively high regardless of whether or not any legal violation actually occurred—it was anticipated from the outset that there was a significant probability that FLAG shortly would likewise become embroiled in securities class action litigation and/or governmental investigations. This in fact happened, although none of the government investigations was ever directed at FLAG, and neither FLAG nor any of its officers or directors were ever charged with any wrongdoing. Millian Decl. ¶¶ 9-12.

The present Lawsuit was filed against FLAG and certain of its senior officers, among others, on April 2, 2002, the day after FLAG filed its Form 10-K. *Id.* ¶¶ 12, 14; *see In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 252 (S.D.N.Y. 2004). The Subpoena at issue here was served on Gibson, Dunn on April 16, 2006, seeking documents relating to the work that Gibson, Dunn performed for FLAG in early 2002, as well as documents related to Gibson, Dunn's follow up work in connection with the present litigation and the government investigations mentioned above. As would be expected given the attorney-client relationship

4

between Gibson Dunn and FLAG and the nature of the relevant legal work, a significant number of the documents sought by the Subpoena consisted of attorney-client communications and/or attorney work product prepared in anticipation of litigation. Gibson, Dunn thereafter produced to plaintiffs a large volume of responsive, non-privileged documents, withheld some documents on privilege grounds, and provided plaintiffs' counsel with a privilege log (the "Log") in January 2007. Millian Decl. ¶¶ 14-19.

On July 31, 2007, plaintiffs' counsel wrote a letter to Gibson, Dunn that took issue with the adequacy of the Log, advanced various legal arguments as to why plaintiffs' counsel believed that certain types of documents could not be privileged, and claimed that 308 of the 815 specific entries in the Log should be produced. *Id.* ¶¶ 20-21. On September 26, 2007, Gibson, Dunn responded to this letter, responding to plaintiffs' arguments and providing a supplemental privilege log (the "Supplemental Log") that provided additional information regarding each of the 308 documents mentioned in the July 31, 2007 letter. *Id.* ¶¶ 22-24. On November 27, 2007, plaintiffs' counsel sent another letter that repeated many of the same assertions previously made, indicating that the parties would not be able to resolve their differences. *See* Friedman Decl., Ex. 15.

### III.

### ARGUMENT

Plaintiffs contend that Gibson, Dunn should be compelled to produce (or the Court should review *in camera*) all of the documents the Firm withheld on grounds of privilege or immunity because they cannot properly evaluate the privileged nature of the documents from the two privilege logs provided. More specifically, the plaintiffs assert that the logs fail to state whether the documents reflect confidential communications from a client to an attorney for the purpose of obtaining legal advice, that the plaintiffs could not identify the relationship of the

5

individuals on the privilege log, and that it appears from the log that documents were withheld when legal advice was being provided by a non-attorney. They are incorrect.[1]

In the alternative, the plaintiffs assert that Gibson, Dunn has improperly withheld 125 documents under the attorney-client privilege and/or the work-product doctrine (see Pl. Br. at 17, 23) and request that this Court review those documents in camera to assess them.

In fact, the log and supplemental log list the individuals who participated in the communications (allowing the plaintiffs to determine whether the communication was a confidential communication with an attorney), state whether legal advice was sought or provided, and state the subject matter of the communication (as well as the date of the communication when available, the number of pages withheld and the basis of the privilege). That is all that is necessary, and the plaintiffs' desire for more information cannot undermine the privileges and protections that attach to documents reflecting communications with or work by a client's in-house or outside counsel. The vast majority of the documents described on the logs, and those specifically challenged by the plaintiffs, reflect communications between FLAG and Gibson Dunn, or FLAG's in-house counsel and FLAG employees, and are protected from disclosure.[2]

---

[1] Despite the plaintiffs' claim that they have prevailed on "assertions of privilege similar to those upon which Gibson Dunn is relying" during discovery conferences in the underlying action, we understand that there is no order, and has been no order, compelling the production of documents in the face of an asserted privilege.

[2] Gibson, Dunn believes that the plaintiffs' challenges can be entirely addressed on the basis of the privilege logs. To the extent that this Court determines that there are any outstanding factual issues regarding particular documents, however, Gibson, Dunn respectfully requests that this Court permit it to address these issues by submitting additional evidentiary material.

A.  **The Plaintiffs Have Sufficient Information to Evaluate the Privileges and Immunities From Production Asserted by Gibson Dunn**

The plaintiffs assert that all of the documents withheld from production on grounds of the attorney-client privilege or other immunity from disclosure should be produced because Gibson, Dunn has not complied with Rule 45 of the Federal Rules of Civil Procedure. This assertion is baseless. Rule 45 provides that "[a] person withholding information under a claim of attorney-client privilege or work product must describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A). This rule is generally satisfied by the production of a privilege log. *See In re Subpoena Duces Tecum*, 439 F.3d 740, 751 (D.C. Cir. 2006). Moreover, courts in this circuit have never held that the failure to comply with Rule 45 results in a blanket waiver of the protection from disclosure. At most, when a court finds that the privilege log fails to comply with Rule 45, courts have ordered an in camera review. Indeed, *United States v. KPMG LLP*, 316 F. Supp. 2d 30, 42 (D.D.C. 2004), cited by the plaintiffs for the proposition that courts will require production in the face of an imperfect privilege log (see Pl. Br. at 16), actually shows that the court conducted an *in camera* review of privileged documents and called for the production of a document only where the privilege could not be established because the identity of a recipient was not described in the privilege log or motion papers. See id. There is no such situation here.

In this case, there is no need for *in camera* review of the documents because Gibson, Dunn's privilege log and supplemental privilege log fully comply with Rule 45, and the plaintiffs (and this Court) have sufficient information to assess the claims of privilege asserted by Gibson, Dunn. The plaintiffs' challenges under Rule 45 rest specifically on three grounds: *first*, that the subject matter descriptions did not provide the "requisite specificity" (Pl. Br. at 15-16); *second*,

7

that Gibson, Dunn failed to indicate whether the communications involved client confidences and legal advice or were prepared in anticipation of litigation, *see* Pl. Br. at 16, and *third,* that it appears that Gibson, Dunn withheld material as privileged that did not reflect an attorney-client communication or where the plaintiffs could not determine whether the individuals who were involved with the communications created or broke a privilege. *Id.*

The plaintiffs' challenges fail because the privilege log and supplemental log (*see* Friedman Decl., Exs. 1 and 2) are as specific as they need to be and set forth the basis of the privilege without revealing the privileged communication at issue. *See* Fed. R. Civ. P. 45. Each entry describes the nature of the privilege asserted, whether legal advice was sought or provided, and what the communication was about. *See* Friedman Decl., Ex. 2. Indeed, the plaintiffs' examples of allegedly improper entries, numbers 761 and 762, show the weakness of their complaints. Those two entries state that the withheld documents reflect legal advice sought and provided relating to "redlines" (in the original log) and "draft agreements" (in the supplemental log). *See* Pl. Br. at 15-16. The plaintiffs' challenge the adequacy of those entries only because they do not describe "the nature of the agreement." *Id.* at 16.

Although many entries in the log do describe the transactions to which the agreements related (*see, e.g.,* Friedman Decl., Ex. 2, entries 451, 774, 452), that description is entirely irrelevant to the issue of privilege. A client's confidential communication with an attorney in which the client seeks legal advice regarding a draft contract is privileged. *See, e.g., Banks v. Office of Senate Sergeant-at-Arms,* 236 F.R.D. 16, 21 (D.D.C. 2006); *Johnson v. Smith,* 2007 U.S. Dist. LEXIS 3973, at *6 (S.D. Ill. Jan. 18, 2007); *Muller v. Walt Disney Prods.,* 871 F. Supp. 678, 682 (S.D.N.Y. 1994). The plaintiffs do not even attempt to explain why further information about the agreement would be relevant to the analysis under Rule 45, and it is not.

Similarly, the plaintiffs' contention that they cannot ascertain whether attorney-client privilege or the work-product immunity has been waived because they cannot determine the identity of certain individuals listed on the logs is without merit. All but four of the forty-seven names identified by the plaintiffs as supposed "unknowns," see Pl. Br. at 16 and Friedman Decl., Ex. 12, were identified by counsel for the Individual Defendants when they produced their own privilege log to the plaintiffs in August 2007.[3] Millian Decl. ¶ __. Three of those four individuals, "S. Moorehead," "K. Stout," and "S. Chase," have already been identified by the plaintiffs as employees of Qwest.[4] See Pl. Br. at 22. Thus, only one name was not known to the plaintiffs, "G. Tischer." Gerald Tischer was a FLAG employee. His name appears in one entry describing an email, see Friedman Decl., Ex. 1, at 9, and his receipt of that email did not destroy the privilege because FLAG's counsel was providing advice to FLAG, his employer.

Nor is there any basis for the plaintiffs' allegation that Gibson, Dunn withheld documents in which legal advice was provided by a non-attorney. See Pl. Br. at 20. The plaintiffs specifically list four examples of this, of which three remain at issue: log entries 267, 276, and 762. Id. at 20 n.28. But the log shows that these documents were properly withheld from production because they reflected client/counsel communications.

---

[3] Four individuals were listed as unknowns by the plaintiffs because of errors. Thus, it appears that when the plaintiffs listed "B. Munnis" in their email of February 9, 2007 (see Friedman Decl., Ex. 12), they meant B. Munns, who was identified as a FLAG employee by the Individual Defendants. Similarly, "A. Harley" (see Friedman Decl., Ex. 1 p. 12) referred to Anna Hanley, whom Gibson, Dunn identified as an attorney (see Friedman Decl. Ex. 13). In addition, "L. Natasha" (see Friedman Decl., Ex. 12) referred (albeit with a production error) to Natasha Labovitz, whom Gibson, Dunn also identified as an attorney with the Firm (see Friedman Decl., Ex. 1 p. 11). Finally, Michael Rosenthal was identified on the initial log in at least one entry as an attorney for Gibson Dunn. (See Friedman Decl., Ex. 1 entry 16).

[4] These individuals were identifiable from non-redacted portions of documents produced by Gibson, Dunn.

9

- Document 267 is an exchange of emails between Gibson, Dunn attorneys, FLAG in-house counsel and FLAG employees regarding document collection for a Global Crossing-related subpoena. The document reflects a request for and provision of legal advice from an attorney and is covered by both the attorney-client privilege and the work-product doctrine. Kees Van Ophem, FLAG's general counsel, is identified on the privilege log as the person who provided the legal advice.

- Document 276 was described in the original log as an email and attachment from a FLAG employee to, among others, FLAG's in-house counsel, containing legal advice regarding the KPNQwest agreement, and was described in the supplemental log as an exchange of emails regarding the terms of that agreement. Such communications are, on their face, privileged.

- Document 762 is an email exchange between FLAG employees and G. Crawford relating to a draft contract. Guy Crawford was in-house counsel at FLAG, and is described as such on the log. A confidential email from FLAG employees to Mr. Crawford seeking legal advice in connection with a draft contract is a privileged communication.

### B. The Challenged Documents Were Properly Withheld From Production

Of the 815 documents withheld from production by Gibson, Dunn, the plaintiffs specifically now challenge only 125 documents, each of which is listed on the "At Issue" Privilege Log appended as Exhibit C (document number order) and Exhibit D (document date order) to the Millian Declaration. As is evident from the At Issue Log, all of these documents fall into one of three categories of clearly privileged documents: (1) communications between FLAG in-house attorneys and other FLAG personnel for the purpose of seeking or rendering legal advice; (2) communications between FLAG and Gibson, Dunn for the purpose of seeking or rendering legal advice; and/or (3) Gibson, Dunn work product prepared in connection with our review of the reciprocal transactions and/or our representation of FLAG and FLAG personnel in responding to subpoenas from the SEC and others for production of documents and/or for witness testimony. Millian Decl. ¶ 29. Further, as discussed below, plaintiffs' attempts to avoid this obvious result with contorted legal arguments must fail.

1.  **Communications Between FLAG's Outside and In-House Counsel And FLAG Employees Are Protected By The Attorney-Client Privilege**

The attorney-client privilege protects confidential communications between an attorney and client made for the purpose of seeking legal advice. *See Reliant Energy Power Generation, Inc. v. F.E.R.C.*, 520 F. Supp. 2d 194, 206 (D.D.C. 2007); *United States v. Naegele*, 468 F. Supp. 2d 165, 168 (D.D.C. 2007). The privilege "applies to disclosures made by a client to an attorney as well as to an attorney's written communications to a client." *Reliant*, 520 F. Supp. 2d at 206. Although in-house lawyers may have non-legal functions that make it less obvious that they are acting in a legal capacity when rendering advice, "[t]here is a presumption that a lawyer in the legal department or working for the general counsel is most often giving legal advice." *Boca Investerings P'shp. v. United States*, 31 F. Supp. 2d 9, 12 (D.D.C. 1998). An outside counsel's role as a legal professional providing legal advice is even more obvious than that of an in-house counsel. *See id.* Each of the lawyers identified as such in connection with the log worked as outside counsel to FLAG or in FLAG's legal department; none are business employees who happen to have law degrees.

Furthermore, contrary to the plaintiffs' assertions, *see* Pl. Br. at 18, a communication from an attorney to a client is privileged even if it is not based upon a specific confidential request from the client. In fact, the D.C. Circuit has specifically held that a communication from an attorney to his client is still protected even if the attorney's legal advice is unsolicited. *See In re Sealed Case*, 737 F.2d 94, 100 n.9, 101 (D.C. Cir. 1984). In explaining its reasoning for this rule, the D.C. Circuit noted the obvious – that an attorney's legal advice to his client is invariably informed by "other knowledge and encounters" that the attorney has had with the client. *See id.* at 101 (unsolicited legal advice from an attorney to a client is protected because the attorney's

11

comments were based on "confidential information previously disclosed to him by management personnel generally and by . . . senior executive[s] specifically").

Thus, the plaintiffs are wrong when they assert that document 175 – which is an e-mail exchange between FLAG general counsel Rod Riley and FLAG employee, Parminder Dost, in which Mr. Riley provides "comments on a draft agreement" – is not protected because the privilege log entry does not reflect that the email contains a specific request for legal advice from the client. *See* Pl. Br. at 18. Even if Mr. Riley had supplied comments on a draft agreement unsolicited, his comments would still be privileged because they were based on confidential information previously disclosed to him about the proposed transaction and agreement. Thus, this document and others like it are privileged.

### 2. Documents Created in Anticipation of Litigation are Protected by the Work-Product Doctrine

The other category of documents challenged by the plaintiffs consists of documents that were created in anticipation of litigation or for trial and are therefore protected from disclosure under Rule 26(b)(3). The work-product doctrine protects from disclosure (a) documents reflecting an attorney's legal analysis or thoughts and impressions (Fed. R. Civ. P. 26(b)(3)) and (b) documents "prepared by a party or her agent, including her attorney, for trial or in anticipation of litigation." *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 1, 3 (D.D.C. 2004). A document is prepared in anticipation of litigation if the nature of the document and the facts surrounding the case indicate it was "prepared or obtained because of the prospect of litigation." *Id.* (*quoting Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987) (citing Fed. R. Civ. P. 26(b)(3)). Indeed, the work-product doctrine will protect materials from disclosure even in the absence of active litigation if there is a reasonable belief

that litigation will commence. *See United States v. Philip Morris, Inc.*, No. 99-CV-2496, 2004 U.S. Dist. LEXIS 27026, at *21-22 (D.D.C. June 25, 2004).

Here, notwithstanding a typographical error in a September 2007 letter, the plaintiffs are well aware that Gibson, Dunn was retained by FLAG in connection with regulatory investigations and anticipated litigation in February 2002. Millian Decl. ¶ 28 and n. 4. The work-product doctrine is properly applied to materials created thereafter in connection with those matters, and the plaintiffs' attempt to create an issue regarding the timing of the retention, *see* Pl. Br. at 21, should be rejected.

The Court can also easily dispense with the plaintiffs' unfounded assertion that the work-product doctrine cannot cover documents dated after the time that the underlying action here was filed. *See, e.g.*, Pl. Br. at 22. Gibson, Dunn itself provided legal advice to FLAG in connection with the present litigation. Millian Decl. ¶ 11. Moreover, documents prepared during the course of litigation are entitled to equal protection under the work-product doctrine. Fed. R. Civ. P. 26(b)(3). In addition, although some of the documents over which Gibson, Dunn asserted work-product protection are undated, it is clear from their authorship and content that they were created after Gibson, Dunn's engagement by FLAG in February 2002, and were created in anticipation of litigation or for trial.[5] The documents comprise attorney notes reflecting interviews with FLAG employees, legal analysis performed by Gibson, Dunn, or communications between Gibson, Dunn attorneys relating to issues arising from its engagement in 2002.

---

[5] *See, e.g.*, entries 299, 323, 354, 403, 428, 438, 490, 492, 802, 809. If necessary, Gibson, Dunn can provide the Court with estimated dates for each of these documents.

Indeed, each log entry the plaintiffs use as an example of an improperly withheld document clearly establishes that the application of the work-product doctrine was proper.

- Document 99 was improperly described in Gibson, Dunn's initial privilege log, but the supplemental log corrected any misconception. As described on the supplemental log, Document 99 is a summary of an email prepared by GDC. Although the date of the original email was in 2001, the email summary was drafted during Gibson, Dunn's engagement representing a FLAG employee being interviewed by a Congressional committee staffer. This is plainly work product.

- Document 102, over which Gibson, Dunn asserted protection under the attorney-client privilege and work-product doctrine, is described on the logs as an email "between GD&C lawyers regarding Qwest-related subpoena received by Flag and client's instructions re: same." The plaintiffs contend that "L. Natasha" is not an attorney and not described on the logs. The supplemental privilege log, however, states that the communication is between "GD&C lawyers" thereby identifying every party to the communication as a Gibson, Dunn attorney.[6]

- Document 802, as described in the privilege logs, is a handwritten note created by Gibson, Dunn attorneys regarding a Securities and Exchange Commission ("SEC") review of FLAG. Gibson, Dunn work product relating to possible SEC investigations of FLAG indisputably qualifies as "anticipation of litigation" for protection as work product. *See In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 475-76 (S.D.N.Y. 1996) (holding that an attorney's notes taken at interviews conducted by the SEC were "unquestionably covered by the work-product rule").

In short, Gibson, Dunn has adequately established the privilege as to each document at issue on this Motion. Should the Court deem it necessary in order to resolve any issue, however, Gibson, Dunn would be pleased to submit additional information to the Court, and or to submit any document for *in camera* review.

---

[6] "L. Natasha" is actually a production error. The entry refers to Natasha Labovitz, a Gibson, Dunn attorney.

14

## III. CONCLUSION

For the foregoing reasons, together with the reasons set forth in our opening Memorandum in support of the present motion, Plaintiffs' Amended Complaint should be dismissed.

DATED: August 18, 2008.

          Respectfully submitted,

          /s/ John C. Millian
          John C. Millian (DC Bar #413721)
          GIBSON, DUNN & CRUTCHER LLP
          1050 Connecticut Avenue, N.W.
          Washington, D.C. 20036
          (202) 955-8500

          *Attorneys for Respondent*
          *Gibson, Dunn & Crutcher LLP*

100506538_1.DOC