UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER T. LOFTIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANDRES BANDE, et al.,<br><br>Defendants. | Civil Action No. 08-mc-487 (JDB) |

## MEMORANDUM OPINION

The motion to compel now before the Court is related to proceedings underway in the U.S. District Court for the Southern District of New York, In re Flag Telecom Holdings, Ltd. Securities Litigation, Civ.A.No. 02-3400 (the "Underlying Action"). The Underlying Action is a securities class action against certain former officers and directors of Flag Telecom Holdings, Ltd., and Citigroup Global Markets Inc. The law firm Gibson, Dunn & Crutcher ("defendant" or "Gibson Dunn") previously represented Flag in several capacities, and plaintiffs served a subpoena on Gibson Dunn on April 16, 2006, seeking the production of documents related to the Underlying Action. Over the next two years, Gibson Dunn produced two "privilege logs,"[1] and plaintiffs and Gibson Dunn have argued over the adequacy of those logs as well as Gibson Dunn's document production.

Plaintiffs filed this motion on July 24, 2008. After the motion was fully briefed, on October 17, 2008 this Court ordered Gibson Dunn to produce sixteen documents for in camera

---

[1] The first privilege log, provided to plaintiffs on January 10, 2007, will be referred to as the "Privilege Log." The second privilege log, provided to plaintiffs on September 26, 2007, will be referred to as the "Supplemental Log."

review. On November 11, 2008, the parties filed a joint motion to stay ruling on plaintiffs' motion because of an anticipated ruling in the Underlying Action. This Court granted the motion to stay, and then granted a joint motion to continue the stay on January 29, 2009. On May 29, 2009, the parties filed a status report advising the Court that rulings in the Underlying Action had not mooted plaintiffs' motion before this Court.

The analysis that follows does not address every document contained in the privilege logs or specifically identified by the parties in their briefing. The privilege logs describe over 800 documents and plaintiffs identify 125 documents as problematic in their briefs. Instead, the Court's analysis addresses in detail the sixteen documents it reviewed in camera. It is the Court's hope -- indeed, its expectation -- that, through application of this analysis to other contested documents, the parties will resolve their remaining discovery disputes.

## ANALYSIS

Plaintiffs raise three arguments in their motion: (1) the privilege logs are insufficient under the Federal Rules of Civil Procedure; (2) Gibson Dunn overreaches with its claims of attorney-client privilege; and (3) Gibson Dunn has improperly withheld documents under the attorney work product doctrine.

## I.  Adequacy of the Privilege Log

Plaintiffs take issue with the privilege logs in their entirety, arguing that their descriptions are too cursory under the Federal Rules of Civil Procedure. Under Rule 45(d)(2)(a), a party invoking a privilege must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Privilege logs must "state the basis upon which the

privilege is claimed, state the subject matter, number of pages, author, date created, and the identity of all persons to whom the original or any copies of the document were shown or provided." Director of OTS v. Ernst & Young, 795 F. Supp. 7, 11-12 (D.D.C. 1992) (internal ellipsis omitted). Of the sixteen documents the Court ordered defendant to produce for in camera inspection, the Privilege Log and the Supplemental Log provide adequate descriptions for eleven documents. See Document Nos. 84, 128, 250, 267, 276, 303, 356, 367, 464, 698, and 802.

The remaining five descriptions, however, are insufficient. The descriptions for Document Nos. 403 and 490 are insufficient because they do not specify the subject matter of the teleconferences. The description for Document No. 431 is insufficient because it does not identify all of the known participants in the teleconferences. Similarly, the description for Document No. 521 is insufficient because it never identifies the memorandum recipient by name. Finally, the description for Document No. 762 is insufficient because it simply refers to "revised redlines" or "draft agreements." This sparse description does not adequately describe the subject matter of those drafts.

But these descriptions, while inadequate, do not result in a wholesale forfeiture of defendant's claim of privilege, as plaintiffs claim. Rather, plaintiffs should identify other entries on the Privilege Log or Supplemental Log that they believe are similarly deficient and defendant should supply the missing information.

## II. Attorney-Client Privilege and Attorney Work Product

Most of the documents plaintiffs seek involve communications from an attorney. See Plaintiffs' Memorandum in Support of Its Motion to Compel ("Pls. Mem.") at 17 n.24. Plaintiffs contend that, in the D.C. Circuit, communications from an attorney are only privileged if they

"disclose[] a confidential communication from the client." Id. at 18 (citing Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 1, 3 (D.D.C. 2004)). In plaintiffs' view, thirteen of the sixteen documents the Court ordered defendant to produce for in camera inspection are not privileged under the law of this Circuit because they are not adequately tied to a confidential client communication. See Document Nos. 84, 128, 250, 276, 303, 356, 367, 403, 431, 464, 490, 521, and 762.

Attorney-client privilege is not quite as narrow as plaintiffs would have it. To be sure, Banks provides that "[t]he attorney-client privilege also protects communications from the attorney to the client but only insofar as the attorney's communication discloses a confidential communication from the client." Banks, 222 F.R.D. at 3. But a long line of cases in the D.C. Circuit -- including the case Banks relies on for this proposition, Brinton v. Dep't of State, 636 F.2d 600 (D.C. Cir. 1980) -- demonstrate that Banks does not accurately convey the Circuit's approach to attorney communications. Brinton held that "when the attorney communicates to the client, the privilege applies only if the communication 'is based on confidential information provided by the client.'" 636 F.2d at 603-04 (quoting Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242, 254 (D.C. Cir. 1977)) (emphasis added); see also In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984) (holding that unsolicited "advice prompted by the client's disclosures" could be privileged because privilege applies to attorney communications "'based, in part at least, upon a confidential communication to the lawyer from the client.'" (quoting Brinton, 636 F.2d at 603-04 (emphasis in original))).

With these principles in mind, the Court has reviewed Document Nos. 84, 128, 250, 276, 303, 356, 367, 403, 431, 464, 490, 521, and 762. All these documents are attorney

communications of advice based in part on a confidential client communication, and these documents are therefore privileged.

Plaintiffs also seek documents that supposedly involve a non-attorney providing legal advice. See Document Nos. 267, 276, and 698. Document No. 267 is easily resolved. The Privilege Log states that the document is an "email exchange" "seeking legal advice of counsel (Van Ophem, K.*)[2] and reflecting legal advice of counsel (Van Ophem, K.*)" regarding "Global Crossing Request." This description does not suggest that a non-attorney provided legal advice and the document reviewed in camera bears that out. Document No. 276 is also easily resolved. Although the Privilege Log states that an email from a non-attorney, Jauregui, P., "contain[s] legal advice of counsel," the Supplemental Log makes clear that the document is "[e]mails between Flag in-house counsel and Flag personnel re: terms of KPNQwest agreement." Hence, the description from the Supplemental Log does not indicate that a non-attorney provided legal advice, and the document reviewed in camera supports that description.

Document No. 698 warrants a closer analysis. Defendant explains in its Response to the Court's Order to Produce Documents ("Def. Resp.") that Document No. 698 contains emails between a Flag business employee and a Flag legal department employee, with copies to Flag's general counsel. Def. Resp. at 4. "[D]ocuments prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel are generally not privileged since they are not communications made primarily for legal advice." Neuder v. Battelle Pacific Northwest Nat. Laboratory, 194 F.R.D. 289, 295 (D.D.C. 2000). But "the attorney-client privilege may be extended to non-lawyers who are 'employed to assist the lawyer in the rendition of professional

---

[2] Gibson Dunn identified attorneys with asterisks in their privilege logs.

legal services.'" Blumenthal v. Drudge, 186 F.R.D. 236, 243 (D.D.C. 1999) (quoting Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 5 F.3d 1508, 1514 (D.C. Cir. 1993)). Extension of the privilege "should only occur when the communication was made in confidence for the purposes of obtaining legal advice from the lawyer." Id. Here, non-attorneys are employed in the legal department "to assist the lawyer in the rendition of professional legal services." See id. Emails between non-attorneys employed in the in-house legal department and other Flag employees, then, are privileged so long as they contain confidential communications for the purpose of legal advice. Document No. 698, which contains confidential communications made for the purpose of legal advice regarding a "master services agreement," is therefore properly withheld as privileged.

Next, plaintiffs contend that defendant has improperly withheld unprivileged draft documents. See Document Nos. 356 and 698. Plaintiffs argue that draft documents are not automatically protected under the attorney-client privilege. Document Nos. 356 and 698 are not good examples to explore plaintiffs' argument. The draft attached to the email in Document No. 356 is clearly not privileged (the draft was created by an adverse party and defendant appears to have produced it). Defendant produced the attachment to Document No. 698 as well. Nevertheless, a short explanation of the legal principles for claiming privilege as to draft documents is warranted because plaintiffs raise the same argument for numerous other documents which the Court did not order defendant to produce for in camera inspection. See, e.g., Document Nos. 79, 251, and 254.

A draft may receive attorney-client privilege or attorney work product protection. Drafts, standing alone, are not "communications" and hence normally are not within the attorney-client

privilege. See In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) (describing drafts as "material that is outside the attorney-client privilege."). But a draft is protected under the attorney-client privilege if the draft itself contains protected confidential communications from the client or the attorney. See Ideal Elec. Co. v. Flowserve Corp., 230 F.R.D. 603, 606-07 (D. Nev. 2005). And a draft receives attorney work product protection if it is prepared by an attorney "in anticipation of litigation." See Fed. R. Civ. P. 26(b)(3); In re Sealed Case, 146 F.3d at 884. The parties should apply these principles in resolving their disputes regarding other draft documents.

Similarly, plaintiffs contest defendant's claim that an attorney's handwritten notes of conversations or teleconferences may not be protected. See Document No. 431. Like draft documents, an attorney's handwritten notes can be protected under attorney-client privilege or work product protection. If the attorney takes notes of a confidential conversation with his or her client, then those notes are privileged to the extent they reflect the client's confidential communications. If the attorney takes notes of an unprivileged conversation, then work product protection may apply if the notes reflect an attorney's mental impressions and the notes were prepared in anticipation of litigation. If the notes effectively transcribe an unprivileged conversation, however, work product protection does not apply.

In applying these principles to Document No. 431, the Court concludes that some portions of these notes are protected and others are not. As defendant explained, Document No. 431 consists of eight sets of notes. Def. Resp. at 7-8. Using defendant's numbering system, parts (1), (3), (4), (6), and (8) all contain attorney notes regarding privileged conversations. These portions of the notes are therefore protected under the attorney-client privilege. Parts (2) and (7),

however, are attorney notes of conversations involving a staff attorney from the House Energy and Commerce Committee.  These notes, therefore, do not receive attorney-client protection.  Nor do they receive work product protection.  Although defendant claims that the notes "reflect [an attorney's] thoughts and mental impressions," a careful review of the notes indicates that they simply transcribe an unprivileged conversation.  Parts (2) and (7), then, are not protected and shall be produced.  As to part (5), which also consists of notes of a conversation involving a staff attorney from the Committee, defendant's claim that the notes contain an attorney's thoughts and mental impressions is more persuasive.  Nonetheless, a majority of part (5) is simply a transcription of the conversation, and thus most of part (5) is not protected.  Hence, defendant shall produce a redacted version of part (5) as well.

Finally, plaintiffs question whether documents with dates that precede Gibson Dunn's representation of Flag may be protected.  Document Nos. 250 and 276, for example, are dated February 8, 2001 and June 27, 2000, respectively.  As discussed above, the Court has reviewed these two documents to determine whether they are entitled to protection under the attorney-client privilege.  And, under Brinton, 636 F.2d at 603-04, these documents are privileged because they are attorney emails based in part on confidential communications by the client seeking legal advice.  The issue, then, is whether these documents may be privileged even though they predate Flag's engagement of Gibson Dunn.

A client does not waive privilege when it provides privileged documents to its litigation counsel in confidence.  Hence, these documents remain privileged even though the protection attached before Gibson Dunn was retained.  But this should not be interpreted to mean that a client can create privilege by disclosing non-privileged facts to litigation counsel.  Attorney-

client privilege protects confidential communications between a client and an attorney, not the underlying information itself.  Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981).  Had the underlying emails in Document Nos. 250 and 276 not been privileged, the mere transmission of these documents from Flag to Gibson Dunn would not have created the privilege Gibson Dunn now claims.

## CONCLUSION

First, plaintiffs claim that the privilege logs are insufficient.  Although most of the challenged privilege log entries are adequate, plaintiffs are correct that some entries lack elements identified as essential by courts in this Circuit.  Second, plaintiffs claim that some of the documents are not entitled to attorney-client privilege or attorney work product protection.  Most of plaintiffs' arguments are unpersuasive for the reasons discussed above.  But plaintiffs' claims are not entirely without merit, also as discussed above.  Accordingly, plaintiffs' motion to compel will be granted in part and denied in part.  With the guidance the Court has provided here, the parties should attempt to resolve their remaining discovery issues.  A separate order accompanies this opinion.

**SO ORDERED.**

          /s/ John D. Bates
       JOHN D. BATES
       United States District Judge

Date: June 16, 2009